**NATIONAL WATER CARRIERS ASSO-CIATION and New York Trap Rock Corporation, Plaintiffs,**

**v.**

**UNITED STATES of America, The Interstate Commerce Commission, the New York, New Haven & Hartford Railroad Company and The Long Island Railroad Company, Defendants.**

United States District Court
S. D. New York.
Nov. 29, 1954.

Foley & Martin, New York City, Christopher E. Heckman and Ned J. Parkesian, New York City, of counsel, for plaintiffs.

Willard R. Memler, Sp. Asst. to Atty. Gen., for the United States.

C. H. Johns, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

William A. Colton, New York City, for Long Island R. Co.

Walter J. Myskowski, New Haven, Conn., for New York, N. H. & H. R. Co.

Before SWAN, Circuit Judge, and RYAN and EDELSTEIN, District Judges.

SWAN, Circuit Judge.

This case is before a court of three judges assembled pursuant to statute.[1] It has been heard upon the amended complaint, the answers thereto, and briefs and arguments. It is a sequel to prior litigation between the same parties, the decision in which is reported in D.C., 120 F.Supp. 719, 726. In that case the same plaintiffs attacked an order of the Interstate Commerce Commission dated February 3, 1953 which established rates for the transportation of crushed stone between Westfield, Mass. and Calverton, L. I., N. Y. and between Branford, Conn. and Calverton, L. I. Judge L. Hand, writing for the court, construed the rates as applicable only (1) "to shipments of substantially 40 cars at a time", and (2) "to shipments that do involve a trucking charge of substantially 40 cents a ton from the siding at Calverton to the place of delivery." The court held that, so construed, the rates should not be annulled, and that the complaint should be dismissed. An order dismissing it was entered March 5, 1954.

Shortly thereafter the railroads petitioned the Commission to vacate its order of February 3, 1953, which provided expressly that it should "remain in effect until the further order of the Commission." Their petition (paragraph 7) stated that if the order were vacated, they would immediately "amend the tariff naming the said rates so as to restrict the application thereof to movements of not less than 35 cars at a time." As to the 40 cents trucking charge referred to in Judge Hand's opinion, they said (paragraph 8) that a charge of at least that

---

1. Title 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325.

amount would necessarily be incurred at any point where stone is delivered by rail, and for this reason it was not necessary nor practicable to include in a tariff a provision limiting the application of the line-haul rate to shipments involving such an additional charge. In paragraph 9 of the petition they stated that to avoid violations of section 4(1) of the Interstate Commerce Act, 49 U.S. C.A. § 4(1), the tariff they "now propose to publish will continue the intermediate application to apply." The plaintiffs' reply to the petition asserted that the allegations of the 7th, 8th and 9th paragraphs thereof show that the proposed tariff will not comply with the order of February 3, 1953 as construed by the District Court. Upon the petition, reply and further consideration of the record, opinion and order of the District Court, Division 2 of the Commission, by order dated May 28, 1954 set aside as of July 1, 1954 its order of February 3, 1953, "good cause appearing therefor." The plaintiffs did not petition the Commission for reconsideration, rehearing or reargument of the order of Division 2.

On June 28, 1954, the New Haven issued a supplement, effective August 1, 1954 to its tariff No. F–4170. This proposed the same rates involved in the prior litigation but restricted their application to shipments of 35 cars at a time (instead of "substantially forty cars at a time") and said nothing with respect to a trucking charge. The plaintiffs filed with the Commission on July 21, 1954 a "Protest and Petition for Summary Rejection and Elimination of Defendants' Supplement to Tariff I.C.C. F—4170, Dated June 28, 1954 as Unlawful, or in the Alternative for Suspension Pending Investigation of the Lawfulness Thereof." The "First Count" of the Protest alleged that the proposed rates "do not meet the qualifications for legality and validity imposed by the District Court in the prior litigation." It was also alleged in counts 2 and 3 that the railroads have no assurance of heavy volume shipments (as they had in the previous litigation) to indicate that a com-

pensatory return may be obtained from a rate less than the normal mileage scale rate, and that as no shipments under the proposed tariff are available in the near future no prejudice will result from the suspension of this rate. On July 28, 1954 the Commission telegraphed the plaintiffs that their petition requesting suspension of the rates was denied. On the same date by telegram the plaintiffs requested reconsideration. On July 30 they were advised by telegram that Division 2 denied their appeal from refusal to suspend the rates. Thereafter on August 4, counsel for the plaintiffs wrote the Commission:

"As the request for suspension was an alternative, we assume the petition for summary rejection and elimination of the tariff was denied. Please advise us whether a formal order has been or will be entered and if so please forward us a copy of it."

To this the Commission replied on August 24th:

"The protested supplement was not rejected. Had it been rejected there would have been no action concerning suspension and investigation.

"As you have been informed, the Board of Suspension declined to suspend the protested provisions and Division 2 voted to deny your appeal from the action of the Board of Suspension. In proceedings such as this, no formal order is entered."

Shortly after the receipt of this letter the plaintiffs brought the present suit to obtain a decree (1) annulling the order of Division 2 dated May 28, 1954, and (2) directing the Commission to enter an order declaring unlawful the rates promulgated by the supplemental tariff of June 28, 1954, effective August 1st.

All the foregoing facts are alleged in the amended complaint or appear from the exhibits referred to therein, certified copies of which were submitted to the court. The defendants' answers dispute none of these facts. They assert that the facts disclose that the plaintiffs

have not exhausted their administrative remedies, and consequently the court lacks jurisdiction to give the requested relief. We think the point is well taken.

■ This is obviously true with respect to the order of May 28, 1954 by which Division 2 set aside the order of February 3, 1953. By its express terms that order was to "remain in effect until the further order of the Commission." Even without such a provision, the Commission has jurisdiction to set aside its own orders. 49 U.S.C.A. §§ 15(2), 16 (6); see Erie R. Co. v. United States, D. C.S.D.Ohio, 64 F.Supp. 162, 163. The prior litigation which resulted in dismissal of the complaint certainly did not deprive the Commission of such jurisdiction, and thus make irrevocable the rates established ·by· the February 3rd· order. Indeed, the plaintiffs frankly so conceded on the argument. If Division 2 was in error in setting aside the February 3rd order on the record before it, and we do not suggest that it was, the plaintiffs' remedy was to apply for rehearing, reargument or reconsideration of the decision. 49 U.S.C.A. § 17(9). They made no such application. Their brief, it is true, asserts "compliance with the statutory requirement" of § 17(9). This assertion appears to be based on the contention that their telegram of July 28th should be deemed a request for reconsideration of the order of May 28th as well as of the refusal by the Board of Suspensions to suspend the rates proposed to become effective August 1st.[2] We do not think this telegram can reasonably be interpreted as referring to the order of May 28th. Moreover, if it could be so interpreted, it was filed too late. See 49 C.F.R. § 1.101(e). Since the plaintiffs failed to comply with the statutory condition precedent to judicial review of the order of May. 28, 1954, this court lacks jurisdiction to annul that order.[3]

■ We also lack jurisdiction to grant the other form of relief asked by the plaintiffs, namely, to direct the Commission to enter an order declaring unlawful the rates embodied in the supplemental tariff effective August 1, 1954. The plaintiffs' "Protest and Petition" filed with the Commission on July 21, 1954 asked for "summary rejection and elimination" of the proposed rates or, in the alternative, for suspension of them pending investigation of their lawfulness. The granting or denial of suspension of a proposed rate is discretionary with the Commission, 49 U.S.C.A. § 15 (7), and its refusal to suspend a rate is not judicially reviewable. Carlsen v. United States, D.C.S.D.N.Y., 107 F. Supp. 398. After denial of suspension the plaintiffs might have filed a formal complaint attacking the rates which went into effect on August 1st. They may still do so and the Commission must grant them a hearing. 49 U.S.C.A. §§ 13(1), 15. Doubtless the Commission might have treated the plaintiffs' "Protest" as a formal complaint and set the matter down for hearing, but it did not see fit to do so. This was an exercise of discretion with which we may not interfere. Nor are we asked to. What the plaintiffs ask is that the court declare the rates unlawful without waiting for the Commission to have a hearing and render an opinion as to their legality. This we may not do. The present application to the court is premature. The plaintiffs

2. "This matter requires expedited handling under the Commission's special rules of practice. By its action today Board of Suspension declined to suspend rates on crushed stone, Connecticut origins to Calverton, New York, filed by New Haven Railroad, effective August First. We submit protested rates in violation of Court Opinion, as explained in our 'Protest and Petition for Summary Rejection and Elimination of Defendants' Supplement to Tariff I.C.C. F-4170, Dated June 28th, 1954, as Unlawful, or in the Alternative for Suspension Pending Investigation of the Lawfulness Thereof.' We respectfully request reconsideration by the Commission, as provided by special rules of practice. Respondents being notified by Wire of this appeal."

3. See Holmes v. United States, D.C.S.D. N.Y., 89 F.Supp. 894, affirmed 339 U.S. 927, 70 S.Ct. 628, 94 L.Ed. 1348; Refrigerated Transport v. United States, D.C.N.D.Tex., 101 F.Supp. 95.

still have their administrative remedy of attacking the rates by formal complaint.

The plaintiffs' position, as stated on page 13 of their Memorandum on Jurisdictional Contentions of Defendants, "is that until evidence adduced by some party shows conditions to be different, the decision of the Three Judge Court of this District must be followed by the Interstate Commerce Commission, which was a party to it." In other words, they rely upon the doctrine of res judicata. We are unable to see the applicability of this doctrine. On the present record the controlling issue is whether the plaintiffs have exhausted their administrative remedies. For the reasons already stated, we hold they have not. Consequently the complaint is dismissed.