**CONSOLIDATED TRUCK SERVICE, INC., a corporation of the State of New Jersey, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, an Administrative Agency of the United States of America, Defendants.**

Civ. A. No. 479.

United States District Court
D. New Jersey.

July 7, 1960.

Cole, Berman & Garth, by Leonard I. Garth, Paterson, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for United States.

H. Neil Garson, Washington, D. C., for Interstate Commerce Commission.

Robert Artz, Philadelphia, Pa., for Pennsylvania R. Co., intervenor.

Before FORMAN, Circuit Judge, and MEANEY and HARTSHORNE, District Judges.

FORMAN, Circuit Judge.

This is an action brought by Consolidated Truck Service, Inc., hereinafter called Consolidated, in which it seeks a preliminary and permanent injunction enjoining the Interstate Commerce Commission from carrying into effect its order entered under Section 216(g) of the Interstate Commerce Act, 49 U.S.C.A. § 316(g) in which the Commission suspended certain rate schedules proposed by Consolidated and instituted an investigation concerning the lawfulness of said rates.

Jurisdiction is alleged under 28 U.S. C. §§ 1337,[1] 1346, 2321 et seq., and Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009.

A temporary restraining order was issued on May 24, 1960 staying the action of the Commission. Thereafter a three-judge statutory court was convened pursuant to 28 U.S.C.A. §§ 2325 and 2284 and a hearing was held on May 31, 1960. At that hearing the Commission moved

1. Probably Section 1336 was intended.

that the temporary restraining order be vacated and the complaint be dismissed for lack of jurisdiction.

Prior to March 28, 1960, Consolidated was hauling green coffee beans by motor truck from the New York-New Jersey area to Jacksonville, Florida at the rate of $1.11 per cwt. At that time various railroads were engaged in the carriage of the same commodity between the same areas at a rate of $1.31 per cwt. On March 28, 1960, the effective rate for rail carriage of green coffee beans between the above areas was reduced to 94 cents per cwt.

In response to this reduction, on or about April 22, 1960, Consolidated filed a rate of 94 cents for the carriage of green coffee beans from the New York-New Jersey area to Jacksonville, Florida to become effective at 12:01 a. m., May 25, 1960. The railroads petitioned to suspend Consolidated's proposed rate. On May 23, 1960, the Commission wired Consolidated that its proposed rate was suspended. On the same day Consolidated telegraphed the Commission to reconsider the suspension notice and the Commission answered by wire dated May 24, 1960, suggesting that Consolidated file a formal petition for reconsideration.[2] On the morning of May 25, 1960, Consolidated received the formal Commission order suspending its proposed rate and ordering an investigation. This was some ten hours after the proposed rate would have normally become effective. On the same day Consolidated alleges that it filed a formal petition to vacate the order of suspension and also sent a wire

2. The following are the telegrams as exchanged.

"PAO70 SYF065 Duplicate of Telephoned Telegram 1960 May 23 AM 11 SY WWa222 18 Collect–HV Washington DC 1122aEDT

Ewald Woiski, Consolidated Truck Service Inc 1911 Willow Ave  Weehawken NJer

Commission's Order I&SM–13534 May 20 Suspended 94 Cent Rate Item 5–5A Supplement 2 Your MFICC 5–

McCoy Secty–

I & SM–13535 20 94 5–5A 2 MFICC5."

"May 23, 1960

"Interstate Commerce Commission "Appellate Division–Suspension Board "Washington, D. C.

"Petition decision Suspension Board I & S M 135–35 May 20th suspending Item 5 Emmf No. 5. We protested rail reduction twenty seven cents but Appellate Division refused suspension. Our reduction seventeen cents proposes to meet rail levels only. Why does Commission discriminate between us and rails? Where is the equity and justice? Proposed rate is compensatory and reasonable. Unless it becomes effective, will be forced out of business as we have lost thousands of pounds of freight to railroads because of Commission action. Will meet with representatives of Commission at Washington any time at your convenience to explain urgency of our position and unfairness of suspension action. We plead that proposed rate become effective. Advise Collect.

"Consolidated Truck Service, Inc."

"PAO30 P UNA005        Collect $2.11 P WB1241 30/29 Collect–Washington DC 23 802P  EDT– 1960 May 24 A M 8 57

Ewald Woiski, Consolidated Truck Service Inc– 1911 Willow Ave  Weehawken NJer  Rte Hoboken NJer

Retel I&S M13535 To Receive Appellate Division Reconsideration Of Suspension Boards Action In Suspending Necessary You File Petition To Vacate In Accordance Rules of Practice Refer Susp 23263–

McCoy  Secretary"

requesting a stay pending the Commission's determination of its petition to vacate and pending the determination resulting from the proposed investigation. No action apparently has been taken on these matters.

Consolidated, in support of its request for injunctive relief, argues that the Commission action is invalid because (1) the wire notifying it of the suspension of its proposed rate reduction did not state the reasons therefor as required by 49 U.S.C.A. § 316(g);[3] (2) the order delivered on the morning of May 25 was similarly defective because of the lack of any "findings, basis, or reasons for the Order of Suspension"; (3) the order of suspension was invalid because it merely stated that "an investigation be, and it is hereby instituted into and concerning the lawfulness of the rates" whereas the statute requires a hearing; and (4) that even assuming the order of suspension was valid in content it was invalid because delivered some ten hours after the effective date of the proposed rate.

Consolidated further alleges that unless an injunction is issued pending final determination by the Commission it will suffer irreparable harm and may even be forced out of business. And it is because of this alleged irreparable harm that Consolidated sees an exception to the rule that only final orders are subject to judicial review.

Finally Consolidated asserts that the action of the Commission in granting the railroads a schedule of 94 cents per cwt. while denying it a similar reduction was discriminatory, arbitrary and thus invalid.

The order of suspension here involved is obviously not a final determination of the lawfulness of the rate proposed by Consolidated. A hearing is yet to be had. The order is interlocutory in nature for its function is to maintain the status quo pending a Commission inquiry. Cf. Humble Oil & Refining Co. v. Federal Power Commission, 5 Cir., 1956, 236 F.2d 819, certiorari denied 1957, 352 U.S. 967, 77 S.Ct. 354, 1 L.Ed.2d 321. Not being a final determination it should not ordinarily be subject to judicial review. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. The Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., preserves the doctrine of exhaustion of administrative remedies. Coastwise Line v. United States, D.C.N.D.Cal.1957, 157 F.Supp. 305; Federal Power Commission v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583. Moreover the action here was one committed to agency discretion. Ferguson-Steere Motor Co. v. United States, D.C.N.D.Tex.1954, 126 F.Supp. 588; Luckenbach Steamship Co. v. United States, D.C.D.Del.1959, 179 F.Supp. 605.[3a] Sec-

3. 49 U.S.C.A. § 316

"(g) Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, * * * for the transportation of passengers or property by a common carrier or carriers by motor vehicle, * * * in interstate or foreign commerce, * * * the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative at once and, if it so orders, without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, * * * and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, * * * but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after hearing, whether completed before or after the rate, * * * goes into effect, the Commission may make such order with reference thereto as would be proper in a proceeding instituted after it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, or charge, or classification, rule, regulation, or practice, shall go into effect at the end of such period: * * * *"

3a. On June 27, 1960, the United States Supreme Court ordered the complaint

tion 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009 would seem to preclude review where discretion is so committed.[3b]

Plaintiff seeks to avoid the above mentioned rules by first contending, in effect, that the Commission action was unauthorized by Section 216(g) of the Interstate Commerce Act, 49 U.S.C.A. § 316 (g), and that therefore jurisdiction was absent. It argues that the Commission failed to state the reasons for its action as required by 49 U.S.C.A. § 316(g).

The suspension order stated:

"And It Further Appearing, that upon consideration of the said schedules and protests thereto there is reason to believe that they would, if permitted to become effective, result in rates and changes, rules, regulations or practices which would be unjust and unreasonable in violation of the Interstate Commerce Act and constitute unfair and destructive competitive practices in contravention of the National Transportation policy; and good cause appearing therefor:"

■ Plaintiff argues that the reasons stated in the order are "mere conclusions or ultimate findings recited in the language of the statute" and "are not enough in the absence of findings to support them." As authority for its position it cites Seatrain Line v. United States, D.C.S.D.N.Y.1958, 168 F.Supp. 819 and Amarillo-Borger Express v. United States, D.C.N.D.Tex.1956, 138 F.Supp. 411.[3c] In the former case a hearing had

been held and the court properly insisted on basic findings to support the ultimate conclusions. Here, as yet, no hearing has been held. Section 316(g), 49 U.S.C.A. only requires a statement of reasons and reasons differ from findings in that the former relate only to law, policy and discretion rather than to facts. Davis, Administrative Law, Sec. 16.12 (1959). As to the latter case cited by the plaintiff (Amarillo-Borger) the court there specifically approved a statement of reasons in a suspension order which is an exact duplicate of the one involved here. In Ferguson-Steere Motor Co. v. United States, supra, and in Hudson and Manhattan Railroad Co. v. United States, Civ. 67–312, dated July 16, 1951 (an unreported opinion by the United States District Court for the Southern District of New York) orders containing less informative reasons were approved.[4] The statement of reasons contained in the order of the Commission at issue here adequately satisfied the requirements of the statute.

■ Plaintiff next argues that since it received the suspension order some ten hours after its proposed rate would ordinarily have become effective, it was invalid. The quick answer to this contention can be found in 49 U.S.C.A. § 321 (a). That section provides:

"* * * Service of notices or orders in proceedings under this chapter may be made upon a motor carrier by personal service upon it or upon the person so designated by it, or by mail addressed to it or to such person at the address filed. * *

---

dismissed as moot as it related to the suspension of rates. 1960, 364 U.S. 280, 80 S.Ct. 1611, 4 L.Ed.2d 1719.

3b. "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—

"(a) Rights of review.

"Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

3c. The United States Supreme Court ordered the judgment vacated and the cause dismissed as moot. 1957, 352 U.S. 1028, 77 S.Ct. 594, 1 L.Ed.2d 598.

4. In Ferguson-Steere the reason given was "* * * that the rights and interest of the public would be injuriously affected thereby." 126 F.Supp. at page 589.

In Hudson and Manhattan the reason was that "* * * the rights and interests of the public appearing to be injuriously affected thereby." (Opinion unreported.)

Whenever notice is given by mail as provided herein the date of mailing shall be considered as the time when notice is served * * *."

It is obvious that since the plaintiff received the suspension order at approximately 10 a. m. on May 25, 1960, it had been mailed prior to the effective date of the plaintiff's proposed rate, i. e. prior to 12:01 a. m., May 25, 1960. In fact the order is dated May 20, 1960. Moreover the plaintiff admits the receipt of a telegram on May 23, 1960, notifying it of the suspension. It can hardly claim surprise or prejudice.[4a]

■ Plaintiff also asserts that 49 U.S. C.A. § 316(g) requires that suspension may only be ordered pending a hearing as to the lawfulness of the rate and that no *hearing* has been instituted. Technically it is true that the word "hearing" is not used in the suspension order. It states:

" * * * that an *investigation* be, and it is hereby, instituted into and concerning the lawfulness of the rates, * * * with a view to making such findings and orders in the premises as the facts and circumstances shall warrant." (Emphasis supplied.)

* * * * * *

"It Is Further Ordered, that the *investigation* in this proceeding shall not be confined to the matter and issues hereinbefore stated as the reason for instituting this investigation, but shall include all matters and issues with respect to the lawfulness of the said schedules under the Interstate Commerce Act." (Emphasis supplied.)

The argument that an "investigation", stated as being instituted in this suspension order, differs from a "hearing" glorifies form at the expense of substance. The Commission has stated that Consolidated will get a hearing and Consolidated does not contend otherwise. Since the notice of the investigation (or hearing) was given at or prior to the time of the suspension order and the actual date for the hearing need not be given prior to the suspension, the statute, in this respect received full compliance.

■ The plaintiff has stressed the financial disaster that will overtake it if it is obliged to await a hearing and determination by the Commission which may not occur until a lapse of seven months. But the statute has so provided and judicial intervention is precluded.[5]

It is further asserted that where irreparable injury is shown, administrative finality is not a condition precedent to judicial review. To support this proposition plaintiff cites Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51; Cantlay & Tanzola v. United States, D.C.S.D.Cal.1953, 115 F.Supp. 72; and Pacific Inland Tariff Bureau v. United States, D.C.D.Oregon 1955, 129 F.Supp. 472. Those cases are clearly distinguishable.

In Isbrandtsen an order of the Federal Maritime Board was involved. Although granting a hearing at a later date it permitted a dual rate system to go into effect without its required specific and affirmative approval. The court held that Isbrandtsen would suffer irreparable damage and was not required to defer its appeal for judicial review after the Board had entered an invalid order. In this case there is the mere allegation of loss of a substantial volume of business. As opposed to the unlawful order of the Board in Isbrandtsen, in this case, the order of the Commission was within its discretionary power.

In Cantlay a hearing had been held and only reconsideration by the Commission remained.

As for Pacific Inland, there, too, a hearing had been held and in referring to the order involved the court stated that

---

4a. Cf. Phillips Petroleum Company v. Federal Power Comm., 10 Cir., 1955, 227 F.2d 470, at page 474 where the court related an order mailed one day after the effective date to a telegram sent prior thereto.

5. See footnote 3.

the order entered by Division 2 of the Interstate Commerce Commission was final. Only the reconsideration procedure remained.

 Section 10(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(c), provides:

"* * * agency action *otherwise* final shall be final for the purposes of this subsection whether or not there has been presented or determined any application * * * for any form of reconsideration, * * *" (Emphasis supplied.)

Since the Act preserves the doctrine of the exhaustion of administrative remedies it is obvious that Section 1009 has application only after a hearing has been held. This would seem to be the position taken in Pacific Inland, supra.[6]

It should be further noted that the court, in Pacific Inland, cited Oklahoma Natural Gas Co. v. Russell, 1923, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659, for the proposition that administrative "finality" is not required "where there is a showing of immediate and irreparable injury flowing from an inadequacy of the prescribed administrative procedure." 129 F.Supp. 478. It can hardly be said that here we have an inadequate administrative procedure. Plaintiff has yet to have the Commission take action on its petition for reconsideration of the suspension order and, of course, the full hearing remains in the future.

Finally, the plaintiff contends that the action of the Commission is arbitrary, capricious and discriminatory in that it refused plaintiff the same rate it permitted to the railroads.

 We by-pass the question of whether even an arbitrary and capricious suspension order in the present context is subject to judicial review. It has led to different opinions. See Luckenbach Steamship Co. v. United States, supra; Bison Steamship Corporation v. United States, D.C.N.D.Ohio 1960, 182 F.Supp. 63 and Ferguson-Steere Motor Co. v. United States, supra. Suffice it to say that without more proof it cannot be said that the action of the Commission is arbitrary and capricious. Surely such a conclusion must await the results of the hearing.

The temporary restraining order will be dissolved and the motion of the Commission to dismiss the complaint will be granted for lack of jurisdiction and on the merits.

An order in accordance herewith should be submitted.

---

6. Judicial review, traditionally, has been confined to orders dealing with the merits and resulting from a hearing upon evidence. Phillips Petroleum Co. v. Federal Power Comm., supra, note 4a.